IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-1330-WJM-JPO

RICHARD MARION,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

    Defendant.

**ORDER DENYING IN PART AND RESERVING RULING IN PART ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a dispute over underinsured motorist ("UIM") benefits. Plaintiff Richard Marion[1] ("Marion") sues Defendant American Family Mutual Insurance Company ("American Family") for failing to pay UIM benefits allegedly owed as compensation for injuries sustained in a May 15, 2017, motor vehicle accident. Marion brings three causes of action: (1) breach of contract; (2) statutory unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 and -1116; and (3) common-law breach of insurance contract. (ECF No. 7.)

Currently before the Court is American Family's Motion for Summary Judgment, which addresses only the second and third claims identified above and is, therefore, actually a motion for partial summary judgment ("Motion"). (ECF No. 42.) For the reasons stated below, the Motion is denied in part and reserved in part as set out below.

---

[1] Marion's father is also named "Richard Marion." *See infra*, Part II. For purposes of this Motion, the Court refers to the younger Richard Marion as "Marion" and the elder as "Richard Marion."

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND[2]

On May 15, 2017, Marion was injured in a motor vehicle accident (the "Accident") in Denver, Colorado.  (ECF No. 42 at 3 ¶ 1; ECF No. 49 at 7.)  Marion's vehicle at the time of the Accident was registered in Nebraska.  (ECF No. 42 at 3 ¶ 3; ECF No. 49 at 7.)

Marion was covered by two American Family insurance policies—a "Family Car

---

[2] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Policy," policy number 0441-5993-03-78-FPPA-NE ("Auto Policy"), and a "Personal Liability Umbrella Policy," policy number 26-U15112-01 ("Umbrella Policy") (together, the "Policies")—issued to his parents. (ECF No. 42-4 at 2; ECF No. 49-2 at 2.) Marion's parents, Richard and Angela Marion, were residents of Nebraska when they obtained the Policies, and they were assisted in doing so by a Nebraska-based insurance agent. (ECF No. 42 at 3 ¶¶ 5–6; ECF No. 49 at 7; ECF No. 42-4 at 2; ECF No. 49-2 at 2.) The Auto Policy Declarations specifically identify an Omaha, Nebraska zip code (the same zip code as the policyholders' listed address) as being "used for rating purposes." (ECF No. 42-4.) Marion still receives mail at his parents' Nebraska home. (ECF No. 42 at 4 ¶ 10; ECF No. 49 at 7.)

Due to the Accident, Marion claimed substantial personal injuries, and he ultimately settled with the tortfeasor for her $100,000 insurance policy limit. (ECF No. 42 at ¶ 11; ECF No. 49 at 7.) Marion then claimed UIM benefits under the Policies. (ECF No. 42 at 4 ¶¶ 13–14; ECF No. 49 at 7.)

### III. ANALYSIS

#### A.  Need for Choice-of-Law Analysis

Much of the Motion hinges on American Family's assertion that Marion's causes of action are governed by Nebraska law. (ECF No. 42 at 15–19.) There is no need to perform choice-of-law analysis unless there is an "outcome-determinative conflict" between the jurisdictions whose laws potentially govern the claims. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 866 (D. Colo. 1996). Here, an outcome-determinative conflict exists as to each of Marion's claims.

First, Nebraska law allows UIM benefits to be offset by liability payments from a third party, Neb. Rev. Stat. § 44-6409(1), whereas Colorado does not, *see* Colo. Rev.

3

Stat. § 10-4-609(1)(c).  Thus, if Nebraska law applies, Marion's recovery for breach of contract, if any, must account for the $100,000 he received from the at-fault driver, whereas if Colorado law applies, no such reduction may be made.  And while this conflict of laws concerns a cause of action that is not the subject of the Motion, as explained further below, whatever law controls the interpretation of the Policies also controls Marion's statutory cause of action.

Second, Marion's unreasonable delay or denial cause of action is based on a Colorado statute that has no Nebraska analog.  (*See* ECF No. 42 at 15.)  Thus, if Nebraska law establishes American Family's statutory duties, the unreasonable delay/denial claim must certainly fail.

Third, while both Nebraska and Colorado recognize a separate cause of action for bad faith breach of insurance contract (sounding in tort), whether an insurance claim is "fairly debatable" is a dispositive issue under Nebraska law and not under Colorado law.  *Compare Radecki v. Mut. of Omaha Ins. Co.*, 583 N.W.2d 224, 229–230 (Neb. 1998) ("[I]f a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based on the tort of bad faith."), *with Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 848 (Colo. 2018) ("If a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was fairly debatable, this weighs against a finding that the insurer acted unreasonably.  Fair debatability, however, is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." (cleaned up)).

For these reasons, the Court finds that it must engage in a choice-of-law analysis.  "As this court is sitting in diversity, . . . Colorado choice of law principles must

4

be applied in the present case." *Power Motive Corp. v. Mannesmann Demag Corp.*, 617 F. Supp. 1048, 1049 (D. Colo. 1985).

**B.     Breach of Contract**

Colorado follows the Restatement (Second) of Conflict of Laws (1971) ("Restatement") for contract claims. *Wood Bros. Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979). Neither policy includes a forum-selection clause. (*See* ECF Nos. 42-4, 49-2.) In the absence of such a clause, the Restatement provides that the contract will be governed by the law of the state with the most significant relationship to the transaction and the parties under the principles stated in Restatement § 6. As relevant here, § 6 provides that

> the factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement § 6(2). Specifically for contract claims, Restatement § 188 provides that

> the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

5

>    (a) the place of contracting,
>
>    (b) the place of negotiation of the contract,
>
>    (c) the place of performance,
>
>    (d) the location of the subject matter of the contract, and
>
>    (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 188(2).

The parties'—and especially Marion's—substantive engagement with the choice-of-law issues presented by this action is sparse, opting instead (quite unhelpfully) to discuss the issues at a high level and simply move on. (*See generally* ECF Nos. 42, 49, 51.) Nevertheless, the Court must consider the relevant contacts more closely.[3]

1. Place of Contracting, Negotiation, and Performance

"[T]he place of contracting is the place where occurred the last act necessary . . . to give the contract binding effect . . . ." Restatement § 188 cmt. e. The place of negotiation and performance are, respectively, precisely what those words suggest. *See id.*

The following facts are undisputed. The Policies were issued in Nebraska to Marion's parents, Richard and Angela Marion, who lived in Nebraska at all relevant times. (ECF No. 42 at 3 ¶¶ 2, 5; ECF No. 49 at 7.) With respect to their purchase of the

---

[3] As American Family notes, Restatement § 193 applies specifically to "contract[s] of . . . casualty insurance" such as the Policies. (ECF No. 42 at 13 (quoting Restatement § 193).) That section, however, is difficult to apply in actions such as this where the Court cannot discern based on the record before it "the state which the parties understood was to be the principal location of the insured risk during the term of the policy." Restatement § 193; *Price v. Am. Fam. Mut. Ins. Co., S.I.*, 2020 WL 948710, at *4–5 (D. Colo. Feb. 27, 2020); *see infra* Part III.B.2.

Auto Policy, Richard and Angela Marion were assisted by an insurance agent who was employed in Nebraska.[4]  (ECF No. 42 at 3 ¶ 6; ECF No. 49 at 7.)  From these undisputed facts, it is clear that the place of contracting and negotiation of the Policies was Nebraska.

As for performance, the parties disagree about whether American Family's claims handling was performed outside Colorado.  (*See* ECF No. 42 at 6 ¶ 20; ECF No. 49 at 9.)  Notably, American Family *does not* claim the record shows the claims handling was performed in Nebraska, merely that it was not performed in Colorado.  (ECF No. 42 at 6 ¶ 20.)  Marion, for his part, argues American Family's mere awareness of the location of the accident and his counsel in Colorado means the handling was performed in, rather than merely incidental to, Colorado.  (ECF No. 49 at 9.)  Neither party addresses Richard and Angela Marion's performance—the payment of premia—of the Policies.  (*See generally* ECF Nos. 42, 49, 51.)  Therefore, the Court concludes the state of performance is inconclusive on this record.

    2.    <u>Location of the Subject Matter of the Contract</u>

In the casualty insurance context, "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state."

---

[4] Though this statement in the Motion clearly refers only to the Auto Policy (*see* ECF No. 42 at 3 ¶ (citing attached Auto Policy declaration page (ECF No. 42-3))), Richard and Angela Marion were assisted by the same agency (though apparently a different agent) with respect to the Umbrella Policy (*see* ECF No. 49-2 at 2).

The Auto Policy declaration page lists the insurance agent as "Castle & Associates, Inc.," located at 2348 Cornhusker Road in Bellevue, Nebraska.  (ECF No. 42-3.)  Meanwhile, the Umbrella Policy declaration page lists the insurance agent as "Travis Castle Agency, Inc.," located at the same address in Bellevue, Nebraska.  (ECF No. 49-2 at 2.)  Moreover, while the listed agent number between the two Policies is different, the agent phone number is identical.  (*Compare id.*, *with* ECF No. 42-3.)

7

Restatement § 193 cmt. b.  The foregoing principle is tempered, however, when the parties do not have a mutual understanding about the location of the insured risk.  *See id.* ("[I]n the case of an automobile liability policy, the parties [*i.e.*, both of them] will usually know beforehand where the automobile will be garaged at least during most of the period in question").  If a driver knows that the vehicle will mostly be in one state, but the insurance company believes that the vehicle's primary location is in another state, it is difficult to properly assess this contact—let alone give it greater weight than any other single contact.

Here, the parties disagree about which state Marion was living and working in at the time of the Accident.  (*See* ECF No. 42 at 3–4, ¶¶ 4, 8; ECF No. 49 at 7.)  Though, it is undisputed that Marion still receives mail at his parent's house in Nebraska, and there is nothing in the record to suggest Marion or his parents informed American Family that he was living in Colorado.  (ECF No. 42 at 4 ¶ 10; *see generally* ECF Nos. 42, 49, 51.) The Court considers it a close call, but ultimately concludes it cannot determine the mutual understanding of the parties as to the location of the insured risk.

3. <u>Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties</u>

As the Court has just explained, it cannot determine, based on the present state of the record, the parties' mutual understanding of where Marion lived at or before the time of the accident.  While this alone is enough for the Court to conclude this contact is indeterminate, the Court notes that American Family is a Wisconsin corporation with its primary place of business in Wisconsin.

4. <u>Synthesis</u>

Given the foregoing record deficiencies and disputes, the Court concludes it

8

cannot at this time determine which state's law controls Marion's breach-of-contract cause of action. Therefore, the Court reserves ruling on this issue.

### C.  Statutory Unreasonable Delay or Denial

"Once it has been determined that the law of a particular state governs the interpretation of an insurance contract, any statutory insurance claims that implicate performance of the contract must also be raised under the law of the controlling state." *Werden v. Allstate Ins. Co.*, 667 F. Supp. 2d 1238, 1245 (D. Colo. 2009); *accord Williams v. Allstate Prop. & Cas. Ins. Co.*, 2020 WL 9432884, *3 (D. Colo. Sept. 28, 2020). Accordingly, the viability of the unreasonable delay or denial cause of action will turn on what state's law the Court finds to apply to the contract dispute, a determination that cannot be made on this record. Therefore, the Court reserves ruling on this issue.

### D.  Common-law Bad Faith

"Claims for bad faith breach . . . of an insurance contract sound in tort." *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo. App. 2003). Although they are obviously connected to the insurance contract, they "exist independently of the liability imposed [there]." *Id.* It is possible for an insurance company to be liable for common-law bad faith even if it turns out that the insurance policy does not provide coverage for the injury giving rise to the claim. *See Domokos v. Shelter Mut. Ins. Co.*, 416 F.3d 1209, 1232–33 (D. Colo. 2019). Thus, the Court must analyze Marion's bad faith cause of action separately, and as a tort, despite its connection to the insurance contract.

Just as for contract claims, Colorado follows the Restatement for tort claims. *See First Nat'l Bank v. Rostek*, 514 P.2d 314, 320 (Colo. 1973). The Restatement provides the following regarding torts:

> (1) The rights and liabilities of the parties with respect to an

> issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>>
>> (b) the place where the conduct causing the injury occurred,
>>
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement § 145.

    1.    <u>Place Where the Injury Occurred</u>

The injury in a bad faith claim is the destruction of the insured's peace of mind and trust in the insurer, and the economic hardship that might result from not receiving insurance payments. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010). If that happened in this case, it happened to Marion wherever he was living during the events following the Accident.

American Family argues "the accident itself occurred in Colorado; however, any conduct in handling the claim would have affected Plaintiff in Nebraska and Colorado, but mostly in Nebraska." (ECF No. 42 at 18.) In support, it explains that Marion "split his time between Nebraska and Colorado[] but was still living with his parents in Nebraska at the time of the accident." (*Id.*) Marion meekly contests this

characterization by suggesting the Motion quoted him out of context and (again, most unhelpfully) inviting the Court to comb through his deposition transcript for contrary testimony without citing any specific portions of that transcript.[5]  (ECF No. 49 at 7.)  Further, American Family asserts the uncontested fact that Marion still receives mail at his parents' house shows he lives in Nebraska and felt the injury in that state.  (ECF No. 42 at 4 ¶ 10; ECF No. 49 at 7.)

As before, *see supra* Part III.B.3, the Court considers this a close call but ultimately concludes the evidence in the present record is insufficient to determine where Marion was living (and therefore where the injury was felt).

   2.   Place Where the Conduct Causing the Injury Occurred

American Family does not address this contact, (ECF No. 42 at 18), and Marion does so in only cursory fashion, (ECF No. 49 at 9, 21–22).  The Court cannot draw any useful conclusions on this contact from the parties' briefs.

   3.   Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties

As already noted, it cannot determine on the current record as presented by the parties what in what state Marion was domiciled (and if it changed during the relevant period, when that occurred).  *See supra*, Part III.B.3.  As for American Family, its state of incorporation and primary place of business is Wisconsin.  *Id.*

   4.   Place Where the Relationship, if any, Between the Parties is Centered

American Family argues that the parties' relationship is centered in Nebraska.  (ECF No. 42 at 18.)  In support, it argues: (1) Richard and Angela Marion "obtained the

---

[5] The Court declines Marion's invitation to do his counsel's work for him.

11

Policy in Nebraska through a Nebraska insurance agent"[6]; (2) Marion's "claim was handled by agents assigned to Nebraska claims, although they were working remotely from neither Nebraska nor Colorado"; and (3) the "policy rates and terms were determined based upon Nebraska law applicable in a Nebraska zip code." (*Id.*) Marion's response is silent on this contact, opting instead to focus entirely on "where the tort . . . occur[ed]." (ECF No. 49 at 21–22.) Consequently, the Court considers this contact conceded by Marion and finds it weighs in favor of applying Nebraska law.

5. Synthesis

While one of the identified contacts definitively favors the application of Nebraska law, the others remain inconclusive. On this record, the Court cannot determine what state's laws govern the common-law cause of action. Therefore, the Court also reserves ruling on this issue.

**E.   American Family's Arguments Assuming Colorado Law Applies**

While American Family's primary arguments are premised upon its assertion that Marion's causes of action are governed by Nebraska law, it argues in the alternative that it is entitled to summary judgment under Colorado law. (ECF No. 42 at 22–25.) It offers only one argument for its asserted entitlement—namely, that both the statutory and common-law causes of action require Marion to prove by a preponderance of the evidence that American Family acted unreasonably, but its claims handling was reasonable as a matter of law. (*Id.*) Beyond its recitation of certain relevant legal standards, American Family offers only one paragraph of legal *analysis* in support of its position. (*Id.* at 24–25.) That paragraph is comprised almost entirely of conclusory

---

[6] Although the Motion is clearly referencing the Auto Policy, as the Court notes above, this fact applies equally to the Umbrella policy. *See supra*, Part III.B.1 n.4.

assertions that American Family's claims handling was "timely" and "reasonable." (*Id.*)

But in the insurance context, "[w]hat constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012). American Family must do much more to convince the Court that Marion's causes of action, if governed by Colorado law, are among the relatively few "appropriate circumstances" to deviate from this general rule. *Id.*

Therefore, this portion of the Motion is denied.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. American Family's Motion for Summary Judgment (ECF No. 42) is DENIED to the extent it seeks partial summary judgment on Marion's claims, and the Court RESERVES RULING on what law governs Marion's causes of action;

2. The parties are DIRECTED to confer regarding the choice-of-law issues in this case and come to an agreement not later than **July 8, 2024** regarding the controlling law of the various causes of action, if possible;

3. If the parties are unable to come to an agreement as to any of the causes of action, the parties are DIRECTED to file simultaneous trial briefs on the above choice-of-law issues relating *only* to those causes of action about which they disagree.

    a) Both parties shall file their respective trial briefs not later than **July 26, 2024**, not to exceed **12 pages**, exclusive of attorney signature blocks and certificate of service. These trial briefs shall set forth the legal and factual

bases which in the parties' view support the state law they believe control Marion's causes of action, **to include a detailed reference to the specific evidence they expect to introduce at trial to establish same**.

b) No response to these trial briefs shall be permitted without prior leave of the Court; and

4. This action REMAINS SET for a 5-day jury trial beginning at **8:30 a.m. on August 19, 2024** in Courtroom A801; the Final Trial Preparation Conference REMAINS SET for **August 2, 2024 at 2:00 p.m.**

Dated this 14th day of June, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge